**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION - CINCINNATI**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 1:21-cr-57 |
| Plaintiff, | : | Judge Matthew W. McFarland |
| v. | : | |
| LAMONT WILLIAMS, | : | |
| Defendant. | : | |

## ORDER AND OPINION

This matter is before the Court on Defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. 80). The Government filed a Response (Doc. 81) to Defendant's Motion, but Defendant did not file a reply in support, and the time to do so has expired. This matter is thus ripe for the Court's review. For the following reasons, Defendant's Motion to Vacate (Doc. 80) is **DENIED**.

## BACKGROUND

FBI agents executed a search warrant at Defendant's residence on May 4, 2021, after he sold fentanyl to a coconspirator for $4,000. (Statement of Facts, Doc. 68, Pg. ID 189; Presentence Report, Doc. 74, Pg. ID 224.) After the agents arrived at Defendant's home, he attempted to flush drugs down the toilet and hide contraband in the attic. (Statement of Facts, Doc. 68, Pg. ID 189; Presentence Report, Doc. 74, Pg. ID 225.)

When searching the attic, the agents found a semi-automatic AK-47 pistol, loaded with one round in the chamber and 12 additional rounds in an attached magazine. (Statement of Facts, Doc. 68, Pg. ID 189; Presentence Report, Doc. 74, Pg. ID 225.) Agents also found approximately 596.8 grams of methamphetamine, as well as approximately $10,000. (Statement of Facts, Doc. 68, Pg. ID 189; Presentence Report, Doc. 74, Pg. ID 225.) Elsewhere in the home, agents recovered three digital scales with narcotics residue, two blenders with narcotics residue, several small baggies of substances that tested positive for methamphetamine, cocaine, and fentanyl, and approximately $10,000 concealed in the pocket of a green jacket. (Statement of Facts, Doc. 68, Pg. ID 189; Presentence Report, Doc. 74, Pg. ID 225.)

During a simultaneous search of Defendant's mother's home, agents found a drug ledger in Defendant's handwriting, as well as a .25 caliber pistol with one round in the chamber and eight rounds in an attached magazine. (Statement of Facts, Doc. 68, Pg. ID 189; Presentence Report, Doc. 74, Pg. ID 225.) Agents also recovered several pills, 23 grams of suspected LSD, 23.2 grams of suspected crack cocaine, 33 grams of suspected fentanyl, and two digital scales with residue. (Statement of Facts, Doc. 68, Pg. ID 189; Presentence Report, Doc. 74, Pg. ID 225.) Defendant's mother told agents that the .25 caliber pistol belonged to Defendant. (Statement of Facts, Doc. 68, Pg. ID 189; Presentence Report, Doc. 74, Pg. ID 225.)

The Hamilton County Crime Laboratory later identified the narcotics seized from the searches as 6.931 grams of a flualprazolam/fentanyl mixture; 9.331 grams of a

fluorofentanyl/fentanyl mixture; 10.595 grams of cocaine; 723.988 grams of methamphetamine; 21.022 grams of fentanyl; .0427 grams of a cocaine/buprenorphine mixture; 1.256 grams of a fentanyl/xylazine mixture; .612 grams of a fentanyl/methamphetamine mixture; and .0470 grams of buprenorphine. (Presentence Report, Doc. 74, Pg. ID 226.) And, over the course of several recorded jail calls, Defendant instructed his mother to get his green jacket and check his dryer vent. (*Id.*; Statement of Facts, Doc. 68, Pg. ID 189.) Agents had already recovered $10,000 from the green jacket, but Defendant's mother provided FBI agents with an ounce of marijuana, which she claimed was in the dryer vent. (Statement of Facts, Doc. 68, Pg. ID 189–90; Presentence Report, Doc. 74, Pg. ID 226.)

On May 18, 2021, a federal grand jury indicted Defendant, charging him with possession with intent to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) ("Count 1"), and possession of a firearm in furtherance of a serious drug offense, in violation of 18 U.S.C. § 924(c) ("Count 2"). (Indictment, Doc. 24.) Count 1 carried a mandatory minimum sentence of 10 years to life imprisonment, and Count 2 carried a mandatory minimum sentence of 5 years to life imprisonment. *See* 21 U.S.C. §§ 841(a)(1), (b)(1)(A); 18 U.S.C. § 924(c).

Defendant pleaded guilty to Count 2 of the Indictment in a Rule 11(c)(1)(C) Plea Agreement, under which the parties agreed to a 120-month sentence that would be served concurrently with any term of imprisonment ordered in Case No. B2002897, then pending in the Hamilton County, Ohio Court of Common Pleas, as well as a 5-year term

of supervised release. (Plea Agreement, Doc. 68, Pg. ID 186.) The Government agreed to dismiss Count 1 of the Indictment upon entry of final judgment. (*See* Order of Dismissal, Doc. 77, Pg. ID 266.) In the Plea Agreement, Defendant waived "his right to appeal the conviction and sentence imposed, except if the sentence imposed exceeds the statutory maximum." (Plea Agreement, Doc. 68, Pg. ID 187.) Defendant also waived "the right to attack his conviction or sentence collaterally, such as by way of a motion brought under 28 U.S.C. § 2255," although the waiver specifically noted that it "shall not be construed to bar a claim by the Defendant of ineffective assistance of counsel or prosecutorial misconduct." (*Id.*)

On October 10, 2024, the Court sentenced Defendant, consistent with the parties' Rule 11(c)(1)(C) Plea Agreement (Doc. 68), to a term of 120 months imprisonment, to run concurrently with any term of imprisonment ordered in Hamilton County Court of Common Pleas Case No. B2002897, followed by a 5-year term of supervised release. (10/10/2024 Minute Entry; Judgment, Doc. 78, Pg. ID 268–69.) Just over a year later, on October 15, 2025, Defendant filed the instant Motion to vacate his sentence under 28 U.S.C. § 2255.

## LAW AND ANALYSIS

To vacate a sentence under 28 U.S.C. § 2255, a petitioner must show that: (1) "the sentence was imposed in violation of the Constitution or laws of the United States," (2) "the court was without jurisdiction to impose such sentence," (3) "the sentence was in excess of the maximum authorized by law," or (4) the sentence is "otherwise subject to

collateral attack." 28 U.S.C. § 2255(a); *Hill v. United States*, 368 U.S. 424, 426–27 (1962). Moreover, a petitioner "must clear a significantly higher hurdle than would exist on direct appeal" and establish a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998) (quotations omitted).

Defendant seeks to vacate his sentence based on an ineffective assistance of counsel theory. "[F]or a criminal defendant in federal custody a motion under 28 U.S.C. § 2255 is generally the preferred mode for raising a claim of ineffective assistance of counsel." *United States v. Ferguson*, 669 F.3d 756, 762 (6th Cir. 2012) (citing *Massaro v. United States*, 538 U.S. 500, 504 (2003)). To succeed on an ineffective assistance of counsel claim, a defendant must demonstrate both that his counsel's performance was deficient and that such performance caused prejudice. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).

As to the performance prong, a defendant bears the burden of "show[ing] that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 446 U.S. at 688. Courts, in turn, apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and must resist "the temptation to rely on hindsight." *Id.* at 689; *Carson v. United States*, 3 F. App'x 321, 324 (6th Cir. 2001). A defendant must satisfy the prejudice prong by "show[ing] that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different." *Strickland*, 466 U.S. at 694. "[S]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

Defendant alleges that his counsel performed ineffectively (1) "by improperly advising [Defendant] to admit to the elements of a § 924(c) offense, when the [G]overnment's factual basis for charging the § 924(c) count was for 'conduct' that ran afoul of *United States v. Mackey*, 265 F.3d 457, 462 (6th Cir. 2001)," (2) by "allowing [Defendant] to be sentenced for 'conduct' the Sixth Circuit has held not to be a violation of 18 U.S.C. § 924(c)(1)(A)'s 'In furtherance of' element," and (3) by "failing to file a Notice of Appeal on [Defendant's] behalf as instructed." (Motion, Doc. 80, Pg. ID 305.) Because Defendant's first two arguments are closely related, the Court addresses them together before turning to the third.

## I. Grounds One and Two

As noted above, Defendant argues that his counsel was ineffective for advising him to admit to and for allowing him to be sentenced for conduct that does not satisfy § 924(c)'s requirements. (Motion, Doc. 80, Pg. ID 305.) The Court notes that Defendant admitted in the Statement of Facts attached to his Plea Agreement that he "possessed the [AK-47] pistol in furtherance of his drug trafficking activities." (Statement of Facts, Doc. 68, Pg. ID 189.) The Court nonetheless examines the facts in light of the Sixth Circuit's decision in *Mackey* and subsequent decisions.

Possession of a firearm on the same premises as a drug transaction is not, by itself, sufficient to demonstrate that a defendant possessed the firearm "in furtherance of" a

drug crime, as required by § 924(c). *United States v. Mackey*, 265 F.3d 457, 462 (6th Cir. 2001). To determine whether a defendant possessed a firearm "in furtherance of" a drug crime, the Court looks to a non-exhaustive list of factors, including "whether the gun was loaded, the type of weapon, the legality of its possession, the type of drug activity conducted, and the time and circumstances under which the firearm was found." *Id.* These factors help "distinguish possession in furtherance of a crime from innocent possession." *Id.* In *Mackey*, the Court found that a firearm was possessed "in furtherance of" a drug crime where the defendant was a drug dealer and "there was an illegally possessed, loaded, short-barreled shotgun in the living room of the crack house, easily accessible to the defendant and located near the scales and razor blades." *Id.*

Under this framework, the Court focuses on a defendant's intent in possessing the firearm. *United States v. Maya*, 966 F.3d 493, 500 (6th Cir. 2020). "If, for example, a drug dealer owns a gun 'to protect the drugs, the proceeds of drug sales, or the dealer himself,' that possession-for-protection purpose will facilitate the crime." *Id.* (quoting *United States v. Bailey*, 882 F.3d 716, 721 (7th Cir. 2018)). "Defendants do not commit the offense, by contrast, if they possess the gun for an 'innocent' purpose—such as for 'hunting' or as a 'wall-mounted antique[.]'" *Id.* (quoting *Mackey*, 265 F.3d at 462). The question thus boils down to this: "whether a jury could rationally find that the defendant possessed the gun to aid the drug crime." *Id.* at 503.

The facts sufficiently show that Defendant possessed the AK-47 pistol in furtherance of his drug trafficking activities in violation of § 924(c). The semi-automatic

AK-47 pistol found in Defendant's attic, which was loaded and ready for immediate use, is of a type commonly used by drug traffickers. *See United States v. Carter*, No. 25-1240, 2026 U.S. App. LEXIS 2997, at *26 (6th Cir. Jan. 30, 2026) (noting that AK-47 firearms are "commonly used by drug traffickers" and that the loaded status of a firearm suggest its readiness to protect drugs); *United States v. McKinney*, 818 F. App'x 412, 417 (6th Cir. 2020) (noting that handguns are more likely to be used by drug traffickers than other types of firearms).

Additionally, the scale and nature of the drug operation suggest that the AK-47 pistol was there to protect it. *See United States v. Parker*, No. 22-6047, 2024 U.S. App. LEXIS 3166, at *12 (6th Cir. Feb. 7, 2024) (noting that "drug traffickers carrying large quantities of drugs often carry guns for their own protection and the protection of their supply"). And, the gun was found near a large amount of methamphetamine, making it "strategically located so that it [would be] quickly and easily available for use." *Mackey*, 265 F.3d at 462. Thus, "a jury could rationally find that the defendant possessed the gun to aid the drug crime," *Maya*, 966 F.3d at 503, and Defendant's ineffective assistance claims regarding his admission to and sentencing on the § 924(c) offense fail as a result. *See United States v. Watters*, No. 19-CR-770, 2022 U.S. Dist. LEXIS 105347, at *3 (N.D. Ohio June 13, 2022) (denying a § 2255 motion to vacate where a defendant claimed counsel was ineffective in advising him to plead guilty to a § 924(c) charge).

## II. Ground Three

In his third ground, Defendant claims that his counsel performed ineffectively by "failing to file a Notice of Appeal on his behalf as instructed." (Motion, Doc. 80, Pg. ID 305.) On review, however, the record lacks facts substantiating this claim.

"It is well settled that a motion to vacate that merely states general conclusions of law without substantiating these empty allegations with supporting facts is without legal merit." *United States v. Mickel*, No. 1:20-CR-159, 2024 U.S. Dist. LEXIS 84135, at *18 (N.D. Ohio May 9, 2024). Defendant does not indicate when he instructed counsel to file a notice of appeal, or whether that instruction came before the filing deadline so as to create prejudice. (*See* Motion, Doc. 80.) Nor does Defendant indicate whether he himself instructed counsel to file the notice, or whether someone else did so—the claim simply states that his counsel failed to file the notice "as instructed," without any evidentiary support. (*Id.* at Pg. ID 305.) Absent these details, the Court cannot adjudicate this claim, so Defendant's ineffective assistance claim on this ground fails. *See Hopkins v. United States*, No. 17-1599, 2017 U.S. App. LEXIS 27978, at *4 (6th Cir. Nov. 27, 2017) (holding that the defendant's ineffective assistance of counsel claim failed where he did not make "a substantial showing that he gave counsel specific instructions to appeal" and "offered only conclusory, repetitive allegations in his various pleadings").

## CONCLUSION

For the foregoing reasons, Defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. 80) is **DENIED**.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: ______________________
JUDGE MATTHEW W. McFARLAND